```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              FRANKFORT
```

LAWRENCE E. FORGY,              )
                                )
    Plaintiff,                  )   Civil Action No. 3:05-37-JMH
                                )
                                )
v.                              )   **MEMORANDUM OPINION AND ORDER**
                                )
                                )
GREGORY D. STUMBO, in his       )
individual and official         )
capacities,                     )
                                )
    Defendant.                  )

                          \*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Defendant's motion to dismiss, abstain, or certify state law questions [Record No. 9] to which Plaintiff responded [Record No. 11].

**FACTUAL BACKGROUND**

On June 9, 2005, Plaintiff Lawrence E. Forgy brought this action for declaratory and injunctive relief, alleging that a Kentucky statute, KRS § 18A.140(1), has "chilled" his First Amendment right of free speech. Specifically, Plaintiff alleges that he desires to recommend individuals for employment by the government, in part on the basis of their political activity, but that, in light of KRS § 18A.140(1), he has a realistic fear of prosecution if he makes recommendations on political grounds.

The Kentucky statute at issue — which is commonly referred to as the Kentucky merit law — forbids discrimination on the basis of

political affiliation or political beliefs, among other things, in merit-based state government employment.[1] The merit law is made subject to criminal enforcement by KRS § 18A.990.

Plaintiff alleges that on May 16, 2005, Defendant — Kentucky Attorney General Gregory D. Stumbo — initiated an investigation into appointments, promotions, demotions, and transfers that allegedly violate the Kentucky merit law. Specifically, Plaintiff references a petition that Douglas W. Doerting ("Doerting"), a Kentucky Transportation Cabinet personnel officer, submitted to the Kentucky Personnel Board requesting that it investigate "illegal political patronage in the Transportation Cabinet." (Pl.'s Mot. for Prelim. Inj. at Ex. A.) In the petition, Doerting references Plaintiff, specifically regarding a letter that Plaintiff formerly wrote to Richard Murgatroyd, Deputy Secretary of the Kentucky Transportation Cabinet. The letter recommends David Jackson for government employment and specifically states, "Mr. David Jackson worked very hard for Gov. Fletcher. He was exposed politically and ran serious risk to his career. His political influence was very important because of his leadership in employee organization." (*Id.* at Ex. D.)

---

[1]Kentucky primarily employs two distinct classes of state employees who work for the executive branch of state government — civil service "merit" employees and politically appointed "non-merit" employees. The merit law at issue prohibits discrimination on the basis of political affiliation with respect to merit employees only.

To date, eight individuals have been indicted under the Kentucky merit law, none of which are individuals charged with violating the merit law solely by writing letters of recommendation. Rather, five of the individuals who have been indicted were employees of the Kentucky Transportation Cabinet at the time of the alleged unlawful acts, and the other three were members of Governor Ernie Fletcher's ("Fletcher") administration at the time of the alleged unlawful acts.[2]

## STANDARD OF REVIEW

Defendant moved for dismissal on grounds of standing, ripeness, abstention, and failure to state a claim, citing Fed. R. Civ. P. 12(b)(1), (2), and (6). Because this Memorandum Opinion and Order addresses only the issue of standing, a subject matter jurisdiction issue, see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), the Court treats this motion as one proceeding under Rule 12(b)(1) only. A 12(b)(1) motion "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving

---

[2] At the time that the parties filed their memoranda of law regarding this motion, only five individuals had been indicted. However, the Court takes judicial notice that since that time, three Fletcher administration members have also been indicted. See Jack Brammer, Ryan Alessi & John Cheves, "GOP chair, two official indicted," *Lexington Herald-Leader online*, July 12, 2005.

3

that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

In this instance, Plaintiff relies on evidence outside the complaint to support his claim that he has standing. As such, this is not a "facial" 12(b)(1) challenge, and the Court instead must assess the factual basis for jurisdiction by weighing the evidence tendered. *Id.* Moreover, the Court notes that the Sixth Circuit has recognized a district court's authority to consider extrinsic evidence when addressing the issue of standing. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1347 n.4 (6th Cir. 1996).

## DISCUSSION

The United States Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies." U.S. Const., art. III, § 2. To define this "case or controversy" requirement, "the courts have developed a series of principles termed 'justiciability doctrines.'" *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Two such justiciability doctrines — both of which Defendant raises in the instant motion — are standing and ripeness. *Id.* at 279, 284.

The standing doctrine requires "the party seeking entrance to the federal forum [to] bear[] the burden of alleging 'facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 566 (6th Cir. 1995)(quoting *Warth v.*

4

*Seldin*, 422 U.S. 490, 518 (1975)).  To establish standing, Plaintiff must show three things.  First, Plaintiff must show that he "suffered an 'injury in fact' — an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent."  *Lujan*, 504 U.S. at 560 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Warth*, 422 U.S. at 508; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  Second, Plaintiff must show that there is a "causal connection between the injury and the conduct complained of" or, in other words, that the injury is "'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Id.* at 560-61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Third, Plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

Because these elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  At the pleading stage, as here, "general factual allegations of injury resulting from the defendant's conduct may suffice."  *Id.*  Moreover, in the context of a plaintiff "seeking

5

declaratory and injunctive relief," as is Plaintiff in this case, the "plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Magaw*, 132 F.3d at 279. In other words, "[t]he constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance." *Golden v. Zwickler*, 394 U.S. 103, 110 (1969).

Plaintiff alleges that KRS §§ 18A.990(1) and (2), which authorize criminal enforcement of the Kentucky merit law, have "chilled" his speech. Specifically, Plaintiff alleges that "[a]lthough [he] would like to recommend individuals for employment by the government, in part on the basis of their political activity, he has a realistic and credible fear of being subject to investigation and prosecution for doing so." (Pl.'s Compl. at ¶ 20.) Despite Plaintiff's allegations, the Court finds that Plaintiff lacks standing to bring this cause of action for the following reasons.

Where a plaintiff alleges, as here, that a criminal statute has a chilling effect on the plaintiff's First Amendment expression, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974), *quoted in Grendell v. Ohio Supreme Court*, 252 F.3d 828, 834 (6th Cir. 2001).

6

On the other hand, the plaintiff's fears of prosecution cannot be merely "'imaginary or speculative.'" *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 41 (1971)). Further, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972), *quoted in Adult Video Assoc.*, 71 F.3d at 566.

The Court finds that Plaintiff's fear of prosecution under KRS §§ 18A.990(1) and (2) is merely "speculative." *Steffel*, 415 U.S. at 459. Although the Court expresses no view as to whether the merit law at issue is overbroad as Plaintiff contends, it is necessary to consider the language of the merit law to determine whether Plaintiff's fear of prosecution is warranted. The merit law, which is made subject to criminal enforcement by KRS §§ 18A.990, provides as follows:

> No person shall be appointed or promoted to, or demoted or dismissed from, any position in the classified service, or in any way favored or discriminated against with respect to employment in the classified services because of his political or religious opinions or affiliations or ethnic origin or sex or disability.

KRS § 18A.140(1).

The Court disagrees with Plaintiff that the language of the statute renders Plaintiff subject to indictment for the conduct at issue. The only conduct in which Plaintiff alleges a desire to engage is the *recommendation* of "individuals for employment by the

7

government, in part on the basis of their political activity." (Pl.'s Compl. at ¶ 20.) Mere recommendation of a candidate for employment, in the Court's view, is very different than appointing, promoting, demoting, or dismissing someone on the basis of political affiliation. *See* KRS § 18A.140(1)("No person shall be appointed or promoted to, or demoted or dismissed from . . . .") To state the obvious, private citizens such as Plaintiff have no power under the statute to hire, fire, promote, or demote an employee. The question of whether the statute criminalizes conduct such as ordering, conspiring with, or bribing an appointing authority[3] to violate the merit law is not before the Court; Plaintiff has not alleged a desire to engage in any such activities and, instead, only alleges that his desire to "recommend" individuals for public employment has been "chilled." Recommendation, in the Court's view, is not encompassed in the merit law such that Plaintiff would have a legitimate fear of prosecution for engaging in such conduct.

Furthermore, the extrinsic evidence to which Plaintiff refers in his response to the instant motion does not alter the Court's

---

[3]"Appointing authority" is defined as "the agency head or any person whom he has authorized by law to designate to act on behalf of the agency with respect to employee appointments, position establishments, payroll documents, register requests, waiver requests, requests for certification, or other position actions." KRS § 18A.005(1).

8

conclusion that Plaintiff lacks standing. First, the fact that Plaintiff's letter, or any other communication for that matter, is subject to a subpoena in the ongoing merit system investigation does not in any way yield the conclusion that Plaintiff, as the author of the letter, is subject to indictment — much less, likely to be indicted.

Second, the Court disagrees with Plaintiff that the newspaper article and editorial to which Plaintiff cites in his response show that Plaintiff's fear of prosecution is warranted. Specifically, Plaintiff relies on two articles from *The Courier Journal*, a Louisville, Kentucky, newspaper. The first, dated May 20, 2005, and titled "From Reform to Spoils," is an editorial about Plaintiff that specifically addresses the recommendation letter at issue. The editorial concludes by stating, "Mr. Forgy says his letter on behalf of Mr. Jackson is 'self-explanatory.' He is right. The question is, will he have to explain it in court?" (Pl.'s Mot. for Prelim. Inj. at Ex. E.) The other article, dated June 10, 2005, and titled "MERIT SYSTEM INVESTIGATION; Forgy disputes investigation; Ex-GOP candidate files federal lawsuit," discusses the instant cause of action, specifically in the context of the merit system investigation. The article contends that Deputy Attorney General Pierce Whites ("Whites") stated that "whether Forgy or anyone else is prosecuted is the decision of a special grand jury impaneled Monday." (*Id.* at Ex. G.)

9

The Court disagrees that the articles and statements to which Plaintiff cites establish that his fears of prosecution are anything other than mere speculation. Whites's statement, which, in the Court's view, can be described as nothing more than a truism, in no way establishes that Plaintiff will be indicted. Moreover, a statement "will he have to explain it in court?" in a mere *editorial* is also insufficient to establish that Plaintiff's fear of prosecution is warranted.[4] Further, the June 10, 2005, newspaper article also states, "Although Forgy has not been subpoenaed or interviewed by investigators, he said he was convinced he is under investigation" — further emphasizing the lack of merit in Plaintiff's claim that prosecution is possible, if not likely.

By way of comparison, in *Steffel*, a Vietnam War protestor sought pre-enforcement review of an anti-handbilling statute. 415 U.S. at 455. The Court held that the plaintiff had standing to bring suit where he established that (1) he was warned on two occasions to stop handbilling, (2) the police informed him that he would likely be prosecuted if he handbilled in the future, and (3)

---

[4] It is also noteworthy that the rhetorical question "will he have to explain it in court?" does not necessarily ask whether Plaintiff will have to explain himself in court *in connection with his own indictment*. It is just as plausible, if not more plausible, that the rhetorical question refers to whether Plaintiff may be subpoenaed to testify in connection with the *other indictments* that have been returned in the merit system investigation.

10

his handbilling companion was prosecuted. *Id.* at 459. The situation in *Steffel* is very different than that before this Court. In this case, Plaintiff does not contend, at least not credibly, that anyone has threatened him with prosecution or even that anyone has warned him to stop writing letters of recommendation.

Under these circumstances, the Court finds that Plaintiff has failed to establish "specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 14, *quoted in Adult Video Assoc.*, 71 F.3d at 566. As such, Plaintiff has failed to show injury-in-fact, the first prong of the standing analysis. *Lujan*, 504 U.S. at 560. Plaintiff's concerns are speculative at best, *Steffel*, 415 U.S. at 459, and constitute nothing more than "[a]llegations of a subjective 'chill.'" *Laird*, 408 U.S. at 13-14. Thus, Plaintiff lacks standing and, as a result, this case is not properly before this Court.[5]

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED**:

(1) that Defendant's motion to dismiss, abstain, or certify state law questions [Record No. 9] be, and the same hereby is,

---

[5]Defendant further moved to dismiss on grounds that another justiciability doctrine — ripeness — barred Plaintiff's claim. Defendant also argued that the Court should either abstain from hearing Plaintiff's case or should certify the statutory interpretation issue to the Kentucky Supreme Court. However, because the Court finds that Plaintiff lacks standing, the Court need not address these additional grounds cited by Defendant.

11

**GRANTED;**

(2) that Plaintiff's motion for preliminary injunction and request for oral argument [Record No. 3] be, and the same hereby is, **DENIED AS MOOT;** and

(3) that Plaintiff's complaint be, and the same hereby is, **DISMISSED IN ITS ENTIRETY.**

This the 18th day of July, 2005.



Signed By:

*Joseph M. Hood*

United States District Judge